**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 29 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| KELLY STANDORF, a single woman, | No. 22-15060 |
| Plaintiff-Appellant, | D.C. No. 2:19-cv-04700-JJT |
| v. | |
| OUT WEST VENTURES, INC.; STEVE COOPER, | MEMORANDUM* |
| Defendants-Appellees, | |
| and | |
| CHRISTIE'S CABARET, an Arizona corporation, | |
| Defendant. | |

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted December 9, 2022
Phoenix, Arizona

Before: WARDLAW and BUMATAY, Circuit Judges, and GLEASON,** District Judge.
Partial Concurrence and Partial Dissent by Judge BUMATAY.

---

      *      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

      **     The Honorable Sharon L. Gleason, Chief United States District Judge for the District of Alaska, sitting by designation.

Kelly Standorf, a former House Mom at Christie's Cabaret in Tempe, Arizona (Christie's), appeals the district court's partial grant of summary judgment dismissing her claim under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (FLSA). Standorf sued appellees Out West Ventures (OWV), owner and operator of Christie's, and Steve Cooper, owner of OWV,[1] to collect unpaid wages for work she performed at Christie's from 2002 to 2018. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse.

1.      The district court erred in dismissing Standorf's claim under Arizona Local Rule of Civil Procedure 7.2(i). Rule 7.2(i) provides that, "[i]f a motion does not conform in all substantial respects with the requirements of [Rule 7.2], or if . . . counsel does not serve and file the required answering memoranda," "such non-compliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily." Ariz. Loc. R. 7.2(i). Typically, cases dismissed on this basis concern a party's failure to timely file a response to a motion, or failure to file a response at all. *See, e.g.*, *Smith v. Bd. of Cnty. Commissioners of San Juan Cnty.*, 854 F. App'x 185, 186 (9th Cir. 2021); *Simpson v. DeJoy*, No. CV-20-00495-PHX-DWL, 2021 WL 3787555, at *3–4 (D. Ariz.

---

[1] Standorf also sued Christie's Cabaret of Glendale, LLC (CCOG), but the district court dismissed the action as to CCOG because OWV—not CCOG—is the corporate entity that owns and operates Christie's. Standorf does not appeal this part of the decision.

Aug. 26, 2021).

Standorf's opposition to OWV's motion for summary judgment does not fit this description: She filed her opposition and it was timely, so Rule 7.2(i) does not apply. Even if failure to respond to a particular argument did constitute a violation of Rule 7.2(i), "[a] motion for summary judgment . . . cannot be granted simply as a sanction for a local rule violation." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

2.      The district court's dismissal was also based on its conclusion that Standorf's claim was time-barred, but this conclusion was also in error. Standorf provided timely evidence that disputes OWV's assertion that she has no claim within the two-year statutory period. Standorf's deposition and affidavit submitted with her opposition are evidence that "[t]hroughout the 16 years [she] worked at the Tempe Christie's," she "did what she was told by [her] bosses," which included "taking on additional tasks" outside the scope of her traditional House Mom duties. And a screenshot of a text message attached to OWV's own statement of facts shows that, on January 28, 2018, an OWV manager named Steve Proctor thanked Standorf for "[holding] the fort down" on a night where Christie's made "21k gross sales."

OWV and Cooper argue that this evidence is "general in nature," and that Standorf did not offer evidence disputing more specific testimony from OWV

managers that she was not required to take on additional responsibilities. But this is controverted by Standorf's testimony that two managers "asked [her] to stay and be the last one out," and that even when Cooper would tell her to stop completing a given task, "it would get handed back over to [her] by [Cooper's] managers" after a few weeks. Kiesha Walker, a Christie's entertainer through 2018, testified that Standorf "signed [the entertainers] in," gave permission for when entertainers could leave, "[took their] house fees," and "ma[d]e sure [the entertainers] were wearing the right outfits."

A cause of action for unpaid wages under FLSA accrues each "day the employee's paycheck is normally issued, but isn't." *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993); *see also* 29 C.F.R. § 790.21(b). Standorf provided evidence that she was directed to perform the work of an employee without payment of wages based on events that occurred during the two years preceding her filing of the complaint on June 10, 2019. Viewing that evidence in the light most favorable to Standorf, as we must on summary judgment, *Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 816 (9th Cir. 2021), her claim should not have been dismissed.

3. The district court erred in granting summary judgment to OWV and Cooper on the issue of willfulness. "If a particular employer's conduct embodies [a] 'willful violation' of FLSA, 29 U.S.C. § 255(a) permits extension of the FLSA's standard two-year statute of limitations to a three-year period." *Alvarez v.*

4

*IBP, Inc.*, 339 F.3d 894, 908 (9th Cir. 2003) (citation omitted). An employer engages in a willful violation when it knowingly or recklessly disregards whether its conduct was prohibited by FLSA. *Id.* at 909.

There remains a genuine dispute of material fact as to whether OWV and Cooper's violation was willful. Both parties agree that Cooper explained to House Moms that, if allowed into Christie's, they could only do so as independent contractors, not as employees, and Christie's policy manual suggests that OWV was well aware of the distinction between independent contractors and employees under FLSA as far back as 2009. Although Cooper instructed Standorf to stop performing certain tasks, Standorf adduces facts indicating that she would eventually be instructed to resume those tasks, and that Christie's managers oversaw Standorf performing tasks outside her typical duties. If OWV and Cooper had knowledge of the significance of employee status, and then instructed Standorf to perform tasks routinely performed by employees, a finder of fact could reasonably conclude that the conduct was willful.[2]

---

[2] The dissent argues that the managers' practice of "hand[ing] back" work to Standorf is not enough to show willfulness. **Diss. at 3.** It asserts that because Standorf never reported these instances to Cooper, "all we really have is Cooper's attempts to comply with the FLSA and his managers repeated failure to do so." *Id.* **at 3–4.** But an employer can willfully violate FLSA if it has "repeated warnings" that its business was not in compliance and recklessly disregards them. *Scalia v. Emp. Sols. Staffing Grp., LLC*, 951 F.3d 1097, 1102 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). Even if Standorf never expressly told Cooper about the managers' behavior, Cooper had repeated warnings that Standorf was performing

5

The district court found that OWV and Cooper's conduct was not willful as a matter of law because the parties agreed to a 16-year business relationship in which Standorf had independent contractor status. But that arrangement is beside the point if OWV directed Standorf to take on tasks outside their agreed-upon relationship. Asking Standorf to do the work of an employee without recognizing her as such could reasonably be deemed an "attempt[] to evade compliance, or to minimize the actions necessary to achieve compliance" with FLSA regulations. *Alvarez*, 339 F.3d at 909.[3]

**REVERSED AND REMANDED.**

---

activities outside the scope of her normal responsibilities. And a finding of OWV's willfulness can be based on all of its managers' actions, not just Cooper's. *Cf. Scalia*, 951 F.3d at 1102. At the summary judgment stage, this is enough to create a genuine dispute as to whether OWV and Cooper's conduct was willful.

[3] Standorf argues that the evidence establishes that she was an employee as a matter of law during the statutory period. Because the district court did not reach this issue in the first instance, and "[a] district court is usually best positioned to apply the law to the record," we decline to exercise our discretion to rule on this question. *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1110–1111 (9th Cir. 2020) (citation omitted). As a result, we also do not reach OWV and Cooper's estoppel and *in pari delicto* defenses.

*Kelly Standorf v. Out West Ventures, Inc*, No. 22-15060
BUMATAY, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that Kelly Standorf has shown sufficient evidence of Out West Ventures' violation of the Fair Labor Standards Act within the two-year limitations period to defeat summary judgment and that it was inappropriate to claim she violated a local rule. I thus join those parts of the memorandum disposition.

But I disagree with the majority on willfulness. Even drawing all inferences in favor of Standorf, no reasonable jury could conclude that Out West Ventures *willfully* violated the FLSA based on this record. At most, Standorf has shown Out West Ventures' knowledge of FLSA requirements and multiple violations of those requirements. As a matter of text and precedent, that isn't enough to demonstrate "willfulness." I thus agree with the district court that Out West Ventures should be granted summary judgment on this issue and I respectfully dissent from that part of the memorandum disposition.

**I.**

Under the FLSA, a plaintiff generally has a two-year statute of limitations. 29 U.S.C. § 255(a). That is, unless the plaintiff can establish a "willful violation" of the FLSA. *Id.* In such case, a plaintiff has three years before the statute of limitations kicks in. *Id.*

The Supreme Court has given this two-tiered structure of limitations some teeth. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132–33 (1988). It has held

1

that "willfulness" has real meaning. After all, "a standard that merely requires that an employer knew that the FLSA 'was in the picture'—virtually obliterates any distinction between willful and nonwillful violations." *Id*. Instead, the Court likened willfulness in this context to mean "voluntary," "deliberate," and "intentional." *Id*. at 133. It doesn't cover "merely negligent" violations of the FLSA. *Id*.

That's why our cases have consistently required something more than an employer's mere awareness of FLSA obligations to establish willfulness. Indeed, we've only determined an employer acted willfully when the employer "attempt[ed] to evade compliance, or to minimize the actions necessary to achieve compliance" with the FLSA. *Ray v. L.A. Cnty. Dep't of Pub. Soc. Servs.*, 52 F.4th 843, 852 (9th Cir. 2022) (simplified). When an employer is on notice of FLSA's requirements and "took no affirmative action" to comply with them or failed to figure out "the types of steps necessary to comply," we've held that satisfies the "willfulness" standard. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003).

For example, when an employer knew of its FLSA obligations to classify certain benefits as regular rate of pay for overtime purposes, but "failed to investigate whether its exclusion of [a type of benefit] from the regular rate of pay complied with the FLSA," that meets "willfulness." *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016).

2

Likewise, in *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014), the employer acted willfully when it had faced prior FLSA litigation, ignored multiple "red flags," "fail[ed] to make an effort to examine" whether its position violated the FLSA, and reclassified employees in response to the FLSA lawsuit. *Id.* at 1258–59.

In *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908, 919 (9th Cir. 2003), we found at least reckless disregard of the FLSA based on an employer's prior FLSA violations and undisputed testimony that the employer said paying the employees overtime would bankrupt the company.

Here, we can presume that Out West Ventures knew full well that, if Standorf performed certain work for the company, she would be classified as an "employee" under the FLSA and would get certain benefits. Standorf has showed that Out West Ventures' owner, Steve Cooper, ordered her to stop doing "employee"-type work multiple times over her 16-year tenure with the company. And we can presume that Cooper did this is precisely to avoid having Standorf classified as an "employee" under the FLSA. The only additional evidence of willfulness is Standorf's testimony that several of Cooper's managers would "hand back" work to her a "few weeks later." When asked why she didn't report to Cooper that managers were giving her back work, Standorf replied that she "didn't want to get anyone in trouble." So all

we really have is Cooper's attempts to comply with the FLSA and his managers repeated failure to do so.

This evidence doesn't amount to an "attempt to evade compliance, or to minimize the actions necessary to achieve compliance" with the FLSA. *Ray*, 52 F.4th at 852. Indeed, it more shows the opposite. It shows that Out West Ventures and Cooper took affirmative steps to try to comply with FLSA—even if ineffectually or incompetently. That Cooper was unsuccessful in ensuring compliance doesn't, without more, constitute "willfulness." It isn't the case, for example, that Standorf alleges that Cooper asked her to stop doing employee work as pretext to have his managers continue to flout the FLSA. Nor is it the case that Standorf repeatedly complained of the FLSA violations to Cooper and Cooper ignored her concerns. Instead, it appears Standorf was silent about the purported violations to protect the Out West Ventures managers.

The majority confuses the willfulness analysis by comparing this case to *Scalia v. Employer Solutions Staffing Group, LLC*, 951 F.3d 1097 (9th Cir. 2020). In that case, a payroll-processing employee affirmatively and repeatedly overrode payroll software "error messages" designed to ensure compliance with FLSA's overtime rules to pay employees less money. *Id*. at 1101. Under these egregious circumstances, we held that the employee's "dismiss[al of] the payroll software's repeated warnings that employees might not be receiving earned overtime pay"

4

established willfulness.  *Id*. at 1102.  Here, we have nothing close to that.  Contrary to the majority's assertion, there's no evidence that Cooper or the Out West Ventures managers had dismissed repeated warnings that the company was violating the FLSA.  In fact, we have the reverse—Cooper gave repeated warnings to Standorf *not* to violate to the FLSA and Standorf's testimony that she never reported any violations.  In essence, the majority transforms warnings *not to violate the FLSA* into warnings that the company *was violating the FLSA*.  Such analysis undermines our precedent on willfulness.

Because Standorf's evidence doesn't reasonably show that Out West Ventures "intentionally" or "deliberately"—rather than "negligently"—violated the FLSA, I would hold that the district court properly granted summary judgment on willfulness.

## II.

For these reasons, I join parts 1 and 2 of majority's memorandum disposition, but respectfully dissent from part 3.

5